UNITED STATES DISTRICT COURT
FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

ANN MARIE DEGENARO-HUBER,  :
                            :
       Plaintiff       :   No. 4:11-CV-01424
                            :
    vs.               :   (Complaint Filed 8/3/11)
                            :
MICHAEL ASTRUE,          :
COMMISSIONER OF SOCIAL   :   (Judge Munley)
SECURITY,             :
                            :
       Defendant       :

**MEMORANDUM**

**Background**

        The above-captioned action is one seeking review of a decision of the Commissioner of Social Security ("Commissioner") denying Plaintiff Ann Marie Degenaro-Huber's claim for social security disability insurance benefits.

        Degenaro-Huber protectively filed her application for disability insurance benefits on August 16, 2005. Tr. 72 and 477.[1]  The application was initially denied by the Bureau of Disability Determination[2] on December 16, 2005, and after reconsideration on February 14, 2007. Tr. 37-42 and 44-46. On April 3, 2007, Degenaro-Huber requested a hearing before an administrative law judge. Tr. 49.  On November 5, 2007, a hearing

---

1. References to "Tr.__" are to pages of the administrative record filed by the Defendant as part of his Answer on June 2, 2011.

2. The Bureau of Disability Determination is an agency of the state which initially evaluates applications for disability insurance benefits on behalf of the Social Security Administration.  Tr. 40.

was held before an administrative law judge. Tr. 17-36 and 388-408.[3]  On May 14, 2008, the administrative law judge issued a decision denying Degenaro-Huber's application. Tr. 7-13 and 423-429.  On June 6, 2008, Degenaro-Huber filed a request for review with the Appeals Council. Tr. 16 and 435.  On June 24, 2009, the Appeals Council concluded that there was no basis to grant Degenaro-Huber's request for review. Tr. 1-3.

Degenaro-Huber then filed on August 20, 2009, an action in this court. Degenaro v. Astrue, Civil No. 09-1608 (M.D. Pa)(Muir, J.).  On January 13, 2010, that case was remanded to the Commissioner for further proceedings based on a motion to remand filed by the Commissioner. Tr. 414-419.

A second hearing before a different administrative law judge was held on January 25, 2011. Tr. 335-361.  On February 23, 2011, the administrative law judge issued a decision denying Degenaro-Huber's application. Tr. 322-330.  On March 21, 2011, Degenaro-Huber filed a request for review with the Appeals Council and on June 29, 2011, the Appeals Council concluded that there was no basis upon which to grant Degenaro-Huber's request for review. Tr. 313-318 and 459-460. Thus, the administrative law judge's decision stood as the final decision of the Commissioner.

Degenaro-Huber then filed a complaint in this court on August 3, 2011.  Supporting and opposing briefs were submitted

---

3. This hearing was held in the state of Nevada.  Shortly after the hearing Degenaro-Huber moved to Pennsylvania.

and the appeal[4] became ripe for disposition on February 13, 2012, when Degenaro-Huber filed a reply brief.

Disability insurance benefits are paid to an individual if that individual is disabled and "insured," that is, the individual has worked long enough and paid social security taxes. The last date that a claimant meets the requirements of being insured is commonly referred to as the "date last insured." It is undisputed that Degenaro-Huber met the insured status requirements of the Social Security Act through September 30, 2006. Tr. 68, 72, 390 and 464. In order to establish entitlement to disability insurance benefits Degenaro-Huber was required to establish that she suffered from a disability on or before that date. 42 U.S.C. § 423(a)(1)(A), (c)(1)(B); 20 C.F.R. §404.131(a)(2008); see Matullo v. Bowen, 926 F.2d 240, 244 (3d Cir. 1990).

Degenaro-Huber, who was born in the United States on January 22, 1962, withdraw from school in 1978 after completing the 10th grade. Tr. 37, 62, 82 and 393. Degenaro-Huber can read, write, speak and understand the English language and perform basic mathematical functions. Tr. 76 and 99. During her elementary and secondary schooling, Degenaro-Huber attended regular education classes. Tr. 82. After withdrawing from school Degenaro-Huber did not obtain a General Equivalency Diploma or

---

4. Under the Local Rules of Court "[a] civil action brought to review a decision of the Social Security Administration denying a claim for social security disability benefits" is "adjudicated as an appeal." M.D.Pa. Local Rule 83.40.1.

complete any type of job training. Tr. 82 and 393.

Degenaro-Huber's work history covers the years 1981 through 1991, 1993 through 1976, 1978 through 1997, and 2000 through 2004. Tr. 69. Degenaro-Huber's total earnings during those years were $404,736.96. Id. Her annual earnings ranged from a low of $77.40 in 1979 to a high of $51,521.70 in 1996. Id. Degenaro-Huber worked for the United States Postal Service as a distribution clerk from August, 1984 to June, 1997. Tr. 12 and 78. Degenaro-Huber also had worked as a manager of a restaurant and as a cook from May 2002, to March 2004. Id.

According to the vocational expert who testified at the second administrative hearing, Degenaro-Huber's past relevant employment[5] was as a post office worker, cook and fast food manager. Tr. 354. The post office clerk position was described as semi-skilled, light work as generally performed but medium to heavy work as actually performed by Degenaro-Huber. Id. The position of cook was described as semi-skilled, medium work and the position of fast food manager as skilled, light work.[6]

─────────────────────

5. Past relevant employment in the present case means work performed by Degenaro-Huber during the 15 years prior to the date her claim for disability was adjudicated by the Commissioner. 20 C.F.R. §§ 404.1560 and 404.1565.

6. The terms sedentary, light, medium, heavy and very heavy work are defined in the regulations of the Social Security Administration as follows:

> (a) *Sedentary work*. Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as

Id.

Degenaro-Huber claims that she became disabled on January

-------------------

one which involves sitting, a certain amount of walking
and standing is often necessary in carrying out job
duties.  Jobs are sedentary if walking and standing are
required occasionally and other sedentary criteria are
met.

(b) *Light work*.  Light work involves lifting no more
than 20 pounds at a time with frequent lifting or
carrying of objects weighing up to 10 pounds.  Even
though the weight lifted may be very little, a job is
in this category when it requires a good deal of
walking or standing, or when it involves sitting most
of the time with some pushing and pulling of arm or leg
controls.  To be considered capable of performing a
full or wide range of light work, you must have the
ability to do substantially all of these activities.
If someone can do light work, we determine that he or
she can also do sedentary work, unless there are
additional limiting factors such as loss of fine
dexterity or inability to sit for long periods of time.

(c) *Medium work*.  Medium work involves lifting no more
than 50 pounds at a time with frequent lifting or
carrying of objects weighing up to 25 pounds.  If
someone can do medium work, we determine that he or she
can do sedentary and light work.

(d) *Heavy work*.  Heavy work involves lifting no more
than 100 pounds at a time with frequent lifting or
carrying of objects weighing up to 50 pounds. If
someone can do heavy work, we determine that he or she
can also do medium, light, and sedentary work.

(e) *Very heavy work*.  Very heavy work involves lifting
objects weighing more than 100 pounds at a time with
frequent lifting or carrying of objects weighing 50
pounds or more.  If someone can do very heavy work, we
determine that he or she can also do heavy, medium,
light and sedentary work.

20 C.F.R. § 404.1567.

29, 2003,[7] because of severe diabetic neuropathy[8] and psoriasis.[9] Tr.

7. Degenaro-Huber was 41 years of age on the alleged disability onset date and only 49 years of age at the time of the second administrative hearing and the ALJ's decision. Degenaro-Huber is considered a "younger individual" whose age would not seriously impact her ability to adjust to other work. 20 C.F.R. §§ 404.1563(c). The Social Security regulations state that "[t]he term younger individual is used to denote an individual 18 through 49." 20 C.F.R., Part 404, Subpart P, Appendix 2, § 201(h)(1).

8. "Neuropathy is a collection of disorders that occurs when nerves of the peripheral nervous system (the part of the nervous system outside of the brain and spinal cord) are damaged. The condition is generally referred to as peripheral neuropathy, and it is most commonly due to damage to nerve axons [nerve fibers]. Neuropathy usually causes pain and numbness in the hands and feet. It can result from traumatic injuries, infections, metabolic disorders, and exposure to toxins. . . Neuropathy can affect nerves that control muscle movement (motor nerves) and those that detect sensations such as coldness or pain (sensory nerves). . . . Pain from peripheral neuropathy is often described as a tingling or burning sensation." Medical News Today, What is Neuropathy? Neuropathy Causes and Treatments, http://www.medical newstoday.com/articles/147963.php (Last accessed December 19, 2012). The Mayo Clinic website indicates that "[i]n many cases, peripheral neuropathy symptoms improve with time – especially if the condition is caused by an underlying condition that can be treated. A number of medications often are used to reduce the symptoms of peripheral neuropathy." Peripheral neuropathy, Definition, Mayo Clinic staff, http://www.mayoclinic.com/health/ peripheral-neuropathy/DS00131(Last accessed December 19, 2012).

9. The Mayo Clinic website describes psoriasis as follows:

Psoriasis is a common skin disease that affects the life cycle of skin cells. Psoriasis causes cells to build up rapidly on the surfaces of the skin, forming thick silvery scales and itchy, dry, red patches that are sometimes painful.

Psoriasis is a persistent, long-lasting (chronic) disease. You may have periods when your psoriasis symptoms improve or go into remission alternating with times your psoriasis worsens.

For some people, psoriasis is just a nuisance. For others,

77. Degenaro-Huber has not worked since March 30, 2004. Id. On that date Degenaro-Huber claims she could no longer stand on her feet. Id.

For the reasons set forth below we will affirm the decision of the Commissioner denying Degenaro-Huber's application for disability insurance benefits.

## STANDARD OF REVIEW

When considering a social security appeal, we have plenary review of all legal issues decided by the Commissioner. See Poulos v. Commissioner of Social Security, 474 F.3d 88, 91 (3d Cir. 2007); Schaudeck v. Commissioner of Social Sec. Admin., 181 F.3d 429, 431 (3d Cir. 1999); Krysztoforski v. Chater, 55 F.3d 857, 858 (3d Cir. 1995). However, our review of the Commissioner's findings of fact pursuant to 42 U.S.C. § 405(g) is to determine whether those findings are supported by "substantial evidence." Id.; Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988); Mason v. Shalala, 994 F.2d 1058, 1064 (3d Cir. 1993). Factual findings which are supported by substantial evidence must be upheld. 42 U.S.C. §405(g); Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001)("Where the ALJ's findings of fact are supported by substantial evidence, we are

---

it's disabling, especially when associated with arthritis. There's no cure, but psoriasis treatments may offer significant relief. Lifestyle measures, such as using a nonprescription cortisone cream and exposing your skin to small amounts of natural sunlight, can improve you psoriasis symptoms.

Psoriasis, Definition, Mayo Clinic staff, http://www.mayoclinic.com/health/psoriasis/DS00193 (Last visited December 19, 2012).

bound by those findings, even if we would have decided the factual inquiry differently."); Cotter v. Harris, 642 F.2d 700, 704 (3d Cir. 1981)("Findings of fact by the Secretary must be accepted as conclusive by a reviewing court if supported by substantial evidence."); Keefe v. Shalala, 71 F.3d 1060, 1062 (2d Cir. 1995); Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001); Martin v. Sullivan, 894 F.2d 1520, 1529 & 1529 n.11 (11th Cir. 1990).

Substantial evidence "does not mean a large or considerable amount of evidence, but 'rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Pierce v. Underwood, 487 U.S. 552, 565 (1988)(quoting Consolidated Edison Co. v. N.L.R.B., 305 U.S. 197, 229 (1938)); Johnson v. Commissioner of Social Security, 529 F.3d 198, 200 (3d Cir. 2008); Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999). Substantial evidence has been described as more than a mere scintilla of evidence but less than a preponderance. Brown, 845 F.2d at 1213. In an adequately developed factual record substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." Consolo v. Federal Maritime Commission, 383 U.S. 607, 620 (1966).

Substantial evidence exists only "in relationship to all the other evidence in the record," Cotter, 642 F.2d at 706, and "must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. N.L.R.B., 340 U.S. 474, 488

8

(1971).  A single piece of evidence is not substantial evidence if the Commissioner ignores countervailing evidence or fails to resolve a conflict created by the evidence.  Mason, 994 F.2d at 1064.  The Commissioner must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. Johnson, 529 F.3d at 203; Cotter, 642 F.2d at 706-707.  Therefore, a court reviewing the decision of the Commissioner must scrutinize the record as a whole.  Smith v. Califano, 637 F.2d 968, 970 (3d Cir. 1981); Dobrowolsky v. Califano, 606 F.2d 403, 407 (3d Cir. 1979).

## SEQUENTIAL EVALUATION PROCESS

To receive disability benefits, the plaintiff must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 432(d)(1)(A).  Furthermore:

> [a]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.  For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

42 U.S.C. § 423(d)(2)(A).

The Commissioner utilizes a five-step process in evaluating claims for disability insurance benefits. <u>See</u> 20 C.F.R. §404.1520; <u>Poulos</u>, 474 F.3d at 91-92. This process requires the Commissioner to consider, in sequence, whether a claimant (1) is engaging in substantial gainful activity,[10] (2) has an impairment that is severe or a combination of impairments that is severe,[11] (3) has an impairment or combination of impairments that meets or equals the requirements of a listed impairment,[12] (4) has the residual

---

10. If the claimant is engaging in substantial gainful activity, the claimant is not disabled and the sequential evaluation proceeds no further.

11. The determination of whether a claimant has any severe impairments, at step two of the sequential evaluation process, is a threshold test. 20 C.F.R. § 404.1520(c). If a claimant has no impairment or combination of impairments which significantly limits the claimant's physical or mental abilities to perform basic work activities, the claimant is "not disabled" and the evaluation process ends at step two. <u>Id.</u> If a claimant has any severe impairments, the evaluation process continues. 20 C.F.R. § 404.1520(d)-(g). Furthermore, all medically determinable impairments, severe and non-severe, are considered in the subsequent steps of the sequential evaluation process. 20 C.F.R. §§ 404.1523 and 404.1545(a)(2).

12. If the claimant has an impairment or combination of impairments that meets or equals a listed impairment, the claimant is disabled. If the claimant does not have an impairment or combination of impairments that meets or equals a listed impairment, the sequential evaluation process proceeds to the next step. 20 C.F.R. § 404.1525 explains that the listing of impairments "describes for each of the major body systems impairments that [are] consider[ed] to be severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience." Section 404.1525 also explains that if an impairment does not meet or medically equal the criteria of a listing an applicant for benefits may still be found disabled at a later step in the sequential evaluation process.

functional capacity to return to his or her past work and (5) if not, whether he or she can perform other work in the national economy. Id. As part of step four the administrative law judge must determine the claimant's residual functional capacity. Id.[13]

Residual functional capacity is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis. See Social Security Ruling 96-8p, 61 Fed. Reg. 34475 (July 2, 1996). A regular and continuing basis contemplates full-time employment and is defined as eight hours a day, five days per week or other similar schedule. The residual functional capacity assessment must include a discussion of the individual's abilities. Id; 20 C.F.R. § 404.1545; Hartranft, 181 F.3d at 359 n.1 ("'Residual functional capacity' is defined as that which an individual is still able to do despite the limitations caused by his or her impairment(s).").

**DISCUSSION**

The administrative law judge at step one of the sequential evaluation process found that Degenaro-Huber had not engaged in substantial gainful work activity from her alleged onset date of January 29, 2003 through September 30, 2006, her date last insured. Tr. 324.

At step two of the sequential evaluation process, the administrative law judge found that Degenaro-Huber had the following

_____

13. If the claimant has the residual functional capacity to do his or her past relevant work, the claimant is not disabled.

11

severe impairment: "obesity, diabetes and psoriasis." Id.  The
administrative law judge explained that "[t]he above impairments are
'severe' only insofar as they cause more than minimal limitation in
the claimant's ability to perform some basic work-related
activities." Tr. 325.

At step three of the sequential evaluation process the
administrative law judge found that Degenaro-Huber's impairments did
not individually or in combination meet or equal a listed
impairment. Id.

At step four of the sequential evaluation process the
administrative law judge found that Degenaro-Huber could not perform
her prior relevant work as a postal clerk, cook and fast food
manager.  The administrative law judge, however, concluded that she
had the residual functional capacity to perform  a range of
sedentary work:

> except she can lift 20 pounds occasionally, 10 pounds
> frequently, sit for 6 hours, stand/walk for 2 out of 8
> hours and must be allowed [to] alternate sit[ting]/
> stand[ing] at least every 15 minutes. She can do no
> crawling, kneeling, climbing or balancing, only
> occasional bending and stooping, perform less than
> frequent fine fingering and handling; have no exposure
> to temperature extremes, wetness, high humidity, toxic
> or abrasive chemicals; and do no work in the food
> industry.

Id.  In setting this residual functional capacity the administrative
law judge relied on the physical functional assessment of Rito B.
Maningo, M.D., who examined Degenaro-Huber on behalf of the Bureau
of Disability Determination. Tr. 198-206.  Dr. Maningo, who is Board
Certified in Internal Medicine, stated that Degenaro-Huber had "a

12

history of psoriasis on the entire scalp, with sparse scattered lesions on the trunk, elbows, abdomen, posterior neck, lower extremities, the pelvic region and the fingernails of both hands" and "no psoriatic involvement of the palmer surfaces of the hands and the plantar surface of the feet." Tr. 198. Dr. Maningo found that she had a history of diabetes mellitus type II with peripheral neuropathy on the legs and feet and a history of hyperlipidemia. Id. He also observed that she was obese. Id.

Dr. Maningo's physical examination of Degenaro-Huber revealed "[p]soriatic eruptions on the whole scalp. Scattered lesions were found on the trunk, front and back, abdomen, anterior pelvis, elbows, posterior neck, and the lower extremities. Psoriatic lesions were also found on the fingernails of both hands." Tr. 200. Dr. Maningo's examination further found that Degenaro's hand grasp was normal "5/5 on each side," there was "no evidence of hand tremors, clubbing of the fingers or toes, pitting edema on either legs, varicosities, or digital ulcers on the fingers and toes on both sides." Id. Dr. Maningo stated that the "hips, knees, and ankles were examined with no evidence of joint abnormal ties. She is wearing well manicured artificial nails. The claimant can pick up a coin from a flat surface and place it in a container with each hand with no difficulty, she can tie a knot with no difficulty, she can button/unbutton her shirt with no difficulty, and she can open a tightly closed lid jar with each hand with no difficulty." Tr. 201. Degenaro-Huber did have increased sensitivity (hyperalgesia) on palpation of the dorsal aspect (top) of the feet but there was no

13

evidence of open sores and "proprioceptive[14] and vibration senses were symmetrical and intact on both sides." Id. Degenaro-Huber had "no evidence of atrophy or fasciculations."[15] Id. Although Dr. Maningo observed Degenaro-Huber slightly limping because of foot pain there was no evidence of foot drop or shuffling and Degenaro-Huber had no difficulty getting on and off the examining table, and no difficulty with tandem walking, walking on toes and heels, and squatting and rising. Id. Dr. Maningo stated that Degenaro-Huber did not need an assistive devise to ambulate. Id.

Dr. Maningo concluded that Degenaro-Huber could occasionally lift/carry 20 pounds, frequently lift/carry 10 pounds, stand and/or walk at least 2 hours in an 8-hour workday, and sit 6 hour in an 8-hour workday. Tr. 203. Dr. Maningo found that Degenaro-Huber could frequently climb ramps/stairs, balance, stoop/bend, kneel, crouch/squat and crawl and occasionally climb ladders and scaffolds. Id. Dr. Maningo stated that Degenaro-Huber needed to alternate standing and sitting which could be accommodated by standard breaks and a lunch period. Id. Dr. Maningo further found that Degenaro-Huber had no limitations with respect to reaching, fingering, handling objects, hearing, seeing, speaking and traveling. Tr. 204. With respect to environmental limitations, Dr.

_____

14. Proprioception is the sense of how your limbs are oriented in space. See Dorland's Illustrated Medical Dictionary, 1528 (32nd Ed. 2012).

15. Dr. Maningo here is indicating that Degenaro-Huber had no decrease in the size of her muscles (atrophy) or small, involuntary muscle twitches (fasciculations).

Maningo only noted that she should avoid temperature extremes. Id.
Dr. Maningo completed a range of motion chart which reveals that
Degenaro-Huber had no limitations whatsoever, including with respect
to her elbows, wrists, knees, cervical spine, lumbar spine and
ankles. Tr. 205-206.

The administrative law judge in setting the residual
functional capacity rejected the assessment dated November 15, 2007,
of Chad Bitner, M.D., a treating physician, who found that Degenaro-
Huber could only lift less than 1 pound, stand/walk less than 2 ½
hours in an 8-hour workday and sit less that 2 ½ hours in an 8-hour
workday. Tr. 292. Dr. Bitner also stated that Degenaro-Huber would
need unscheduled breaks of 20 minutes, would need to elevate her
legs and that her restrictions began in January, 2004. Tr. 293.
In rejecting Dr. Bitner's opinion, the ALJ specifically stated as
follows:

> Dr. Bitner has treated the claimant off and on during the
> period at issue. His notes are relatively sparse and do
> not document an impairment that would cause the claimant
> to be unable to lift greater than 1 pound[.] There is
> evidence of impairments that would limit her ability to
> stand/walk, specifically peripheral neuropathy and
> obesity. However, there is no impairment during the
> relevant time frame that would limit her ability to sit.
> The claimant did have psoriasis, but the medical records
> do not document that it was present on [a] consistent
> enough basis at the time of the date last insured to
> warrant continuous limitations based on that diagnosis.
> The flares were intermittent and the claimant was
> sporadic in her office visits.
>
> Clearly, the more dire medical evidence occurs after the
> date last insured. Prior to September 30, 2006, the
> medical evidence simply is not strong enough [to] support
> the treating physician's opinion[.]

Tr. 328-2329.

15

Based on the above residual functional capacity of a limited range of sedentary work and the testimony of a vocational expert, the administrative law judge at step five of the sequential evaluation process found that Degenaro-Huber could perform unskilled, sedentary work as a video monitor, and semi-skilled, sedentary work as an information clerk, and that there were a significant number of such jobs in the national economy. Tr. 330.

The administrative record in this case is 640 pages in length, primarily consisting of medical and vocational records. A large portion of the medical records relate to treatment Degenaro-Huber received after the date last insured and are not relevant to our determination. Degenaro-Huber's primary argument is that the administrative law judge erred at step three of the sequential evaluation process by failing to find that Degenaro-Huber's psoriasis met or equaled the requirements of Listing 8.05. Degenaro-Huber also argues that the administrative law judge erred by failing to properly evaluate Dr. Bitner's opinion; that the administrative law judge erred by inappropriately judging Degenaro-Huber's credibility; and that the administrative law judge erred by failing to appropriately consider Degenaro-Huber's obesity at step 5 of the sequential evaluation process.  We have thoroughly reviewed the record in this case and find no merit in Degenaro-Huber's arguments.

At step two the administrative law judge found that Degenaro-Huber suffered from severe impairments.  If Degenaro-

Huber's severe impairments met or equaled a listed impairment, she would have been considered disabled per se and awarded disability benefits. However, a claimant has the burden of proving that his or her severe impairment or impairments meet or equal a listed impairment. Sullivan v. Zebley, 493 U.S. 521, 530 (1990). To do this a claimant must show that all of the criteria for a listing are met Id. An impairment that meets only some of the criteria for a listed impairment is not sufficient. Id. To qualify for benefits by showing that an impairment, or combination of impairments, is equivalent to a listed impairment, Degenaro-Huber had the burden to present "medical findings equal in severity to all the criteria for the one most similar listed impairment." 493 U.S. at 531. The Social Security regulations require that an applicant for disability benefits come forward with medical evidence "showing that [the applicant] has an impairment(s) and how severe it is during the time [the applicant] say[s] [he or she is] disabled" and "showing how [the] impairment(s) affects [the applicant's] functioning during the time [the applicant] say[s] [he or she is] disabled." 20 C.F.R. §§ 404.1512(c) and 416.912(c).

Degenaro-Huber contends that her psoriasis meets or equals the criteria of Listing 8.05. However, counsel prior to the first administrative hearing stated that he was not contending that Degenaro-Huber met or equaled the criteria of any listed impairment. Moreover, the medical evidence does not establish that on or before

17

September 30, 2006 (the date last insured), Degenaro-Huber met or

equaled the criteria of Listing 8.05.  That listing states in

relevant part as follows:

> 8.05 Dermatitis (for example, psoriasis . . .)with
> extensive skin lesions that persist for at least 3 months
> despite continuing treatment as prescribed.

The term "extensive skin lesions" is defined as "those that involve

multiple body sites or critical body areas, and result in a very

serious limitation. Examples of extensive skin lesions that result

in very serious limitation include but are not limited to: a. Skin

lesions that interfere with motion of your joints and that very

seriously limit your use of more than one extremity; that is two

upper extremities, two lower extremities, or one upper extremity and

one lower extremity. b. Skin lesions on the palms of both hands that

very seriously limit your ability to do fine and gross motor

movements. c.  Skin lesions on the soles of both feet, the

perineum,[16] or both inguinal areas[17] that very seriously limit your

ability to ambulate."

The medicals records prior to September 30, 2006, do not

document very serious functional limitations resulting from

---

16. Perineum is defined as "the region between the thighs, bounded
in the male by the scrotum and anus and in the female by the
vulva and anus, and containing the roots of the external
genitalia." Dorland's Illustrated Medical Dictionary, 1414 (32nd
Ed. 2012).

17. Inguinal areas are the groan regions between the abdomen and
the thighs. See Dorland's Illustrated Medical Dictionary, 939
(32nd Ed. 2012).

Degenaro-Huber's psoriasis.  Moreover, no treating or examining physician has indicated that Degenaro-Huber's psoriasis meets or equals the criteria of Listing 8.05.  Dr. Maningo's report of his examination of Degenaro-Huber clearly reveals that Degenaro-Huber did not have very serious functional limitations as a result of her psoriasis.

The administrative law judge did not err when he found at step three of the sequential evaluation process that Degenaro-Huber's impairments did not meet or equal the criteria of a listed impairment.

As for Dr. Bitner's assessment dated November 11, 2007, after the alleged disability onset date, the ALJ gave an adequate reason for rejecting it.  An ALJ does not have to uncritically accept the opinion of a treating physician.  In this case the records of Dr. Bitner which are relatively few do not support his opinion.  The ALJ appropriately relied on the opinion of Dr. Maningo in setting Degenaro-Huber's residual functional capacity. See Chandler v. Commissioner of Soc. Sec., 667 F.3d. 356, 362  (3d Cir. 2011)("Having found that the [state agency physician's] report was properly considered by the ALJ, we readily conclude that the ALJ's decision was supported by substantial evidence[.]").

Finally, we are satisfied that the ALJ appropriately considered Degenaro-Huber's obesity and her credibility.  Dr. Maningo did not find that Degenaro-Huber's obesity would result in

totally disabling functional limitations.  The ALJ considered it a severe impairment and in conjunction with Degenaro-Huber's other impairments appropriately limited Degenaro-Huber to sedentary work. The administrative law judge observed Degenaro-Huber testify and determined that her statements concerning the intensity, persistence and limiting effects of her symptoms were not credible to the extent that they were inconsistent with the ability to perform a limited range of sedentary work.  The administrative law judge was not required to accept Degenaro-Huber's claims regarding her physical limitations. See Van Horn v. Schweiker, 717 F.2d 871, 873 (3d Cir. 1983)(providing that credibility determinations as to a claimant's testimony regarding the claimant's limitations are for the administrative law judge to make).  It is well-established that "an [administrative law judge's] findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since [the administrative law judge] is charged with the duty of observing a witness's demeanor . . . ."  Walters v. Commissioner of Social Sec., 127 f.3d 525, 531 (6th Cir. 1997); see also Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 801 (10th Cir. 1991)("We defer to the ALJ as trier of fact, the individual optimally positioned to observe and assess the witness credibility.").  Because the administrative law judge observed Degenaro-Huber when she testified at the hearing on January 25, 2011, the administrative law judge is the one best suited to assess the credibility of Degenaro-Huber.

Our review of the administrative record reveals that the decision of the Commissioner is supported by substantial evidence. We will, therefore, pursuant to 42 U.S.C. § 405(g) affirm the decision of the Commissioner.[18]

An appropriate order will be entered.


s/ James M. Munley
JAMES M. MUNLEY
United States District Judge


Dated: December    26, 2012

---

18. Our decision does not preclude Degenaro-Huber from filing an application for supplemental security income benefits based on changes in her medical condition which occurred after September 30, 2006, her date last insured.  Supplemental security income is a federal income supplement program funded by general tax revenues (not social security taxes).  It is designed to help aged, blind and other disabled individuals who have little or no income.  Insured status is irrelevant in determining a claimant's eligibility for supplemental security income benefits.